UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRAD SNYDER,

          Plaintiff,

    v.

NATIONAL ARCHIVES AND RECORD
ADMINISTRATION,

          Defendant.

Civil Action No. 23-0731 (CKK)

## DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant the National Archives and Record Administration ("Defendant" or "NARA"), through undersigned counsel, respectfully opposes Plaintiff Brad Snyder's Motion for Summary Judgment (ECF No. 11) and cross moves for summary judgment under Federal Rule of Civil Procedure 56(a). Because the documents at issue are privileged under Exemption 7(D), Defendant is entitled to summary judgment. This motion is based on the attached memorandum of points and authorities, statement of undisputed material facts, *Vaughn* Index, and the Declaration of Rebecca Calcagno ("Calcagno Decl."). A proposed order is also enclosed.

\*     \*     \*

Dated: October 17, 2023
    Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____ /s/ L'Shauneé J. Robertson_____
    L'SHAUNTEE J. ROBERTSON
    D.C. Bar  #980248
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-1729
    Lshauntee.robertson@usdoj.gov


*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRAD SNYDER,

        Plaintiff,

    v.

NATIONAL ARCHIVES AND RECORD
ADMINISTRATION,

        Defendant.

Civil Action No. 23-0731 (CKK)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

LEGAL STANDARDS…………………………………………………………………...2

ARGUMENT……………………………………………………………………… .3

   I.    Defendant is Entitled to Summary Judgment for Each of the 24 Redactions….….4

        A.    The Records at Issue Were Compiled for Law Enforcement Purposes…...5

        B.    The Presence of Source Codes and Notations on The Face
            of The Documents Establish That the FBI Provided Express
            Assurances of Confidential Treatment……………………………………5

        C.    Defendant Has Established Reasonably Foreseeable Harm………………8

        D.    Plaintiff's Arguments Mischaracterize Defendant's Position and
            the Law…………………………………………………………………...10

   II.    Defendant Released All Reasonably Segregable Information..…………..………12

CONCLUSION…………………………………………………………………………..13

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                               **Page(s)**

*Anderson v. Liberty Lobby, Inc.,*

    477 U.S. 242 (1986).................................................................................................................. 2

*Armstrong v. Exec. Off. of the President,*

    97 F.3d 575 (D.C. Cir. 1996)................................................................................................... 13

*Blanton v. Dep't of Justice,*

    64 Fed. Appx. 787 (D.C. Cir. 2003) ....................................................................................... 11

*Brayton v. Off. of U.S. Trade,*

    Rep., 641 F.3d 521 (D.C. Cir. 2011)......................................................................................... 2

*Bullock v. Fed. Bureau Investigation,*

    577 F. Supp. 2d 75 (D.D.C. 2008) .......................................................................................... 11

*Callimachi v. Fed. Bureau Investigation,*

    583 F. Supp. 3d 70 (D.D.C. 2022) ................................................................... 6, 7, 8, 9, 10, 11

*Campbell v. Dep't of Justice,*

    164 F.3d 20 (D.C. Cir. 1998) ............................................................................................. 6, 11

*Canning v. Dep't of Just.,*

    567 F. Supp. 2d 104 (D.D.C. 2008) ........................................................................................ 13

*Celotex Corp. v. Catrett,*

    477 U.S. 317 (1986).................................................................................................................. 2

*Clemente v. Dep't of Justice,*

    No. 20-1527, 2022 U.S. Dist. LEXIS 210724 (D.D.C. Nov. 21, 2022) .................................... 7

*Clemente v. Fed. Bureau of Investigation*,

  2022 U.S. Dist. LEXIS 21 ........................................................................... 9

*Comm. for Freedom of the Press v. Customs & Border Prot.*,

  567 F. Supp. 3d 97 (D.D.C. 2021) ............................................................. 9

*Dep't of Def. v. Fed. Lab. Rels. Auth.*,

  ("FLRA"), 510 U.S. 487 (1994) ................................................................. 3

*Dep't of Just. v. Tax Analysts*,

  492 U.S. 136 (1989) ..................................................................................... 3

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*,

  478 F. Supp. 2d 77 (D.D.C. 2007) ......................................................... 3, 4

*King v. Dep't of Justice*,

  830 F.2d 210 (D.C. Cir. 1987) .................................................................. 7

*Kishore v. Dep't of Justice*,

  575 F. Supp. 2d 243 (D.D.C. 2008) ......................................................... 7

*Landano v. Dep't of Justice*,

  508 U.S. 165 (1993) ..................................................................................... 4

*Larson v. Dep't of State*,

  565 F.3d 857 (D.C. Cir. 2009) .................................................................. 3

*Mays v. Drug Enforcement*,

  Agency, 234 F.3d 1324 (D.C. Cir. 2000) ................................................. 6

*McCutchen v. Dep't of Health & Human Servs.*,

  30 F.3d 183 (D.C. Cir. 1994) .................................................................... 3

*McGehee v. CIA,*

    697 F.2d 1095 (D.C. Cir. 1983) ........................................................................ 2

*Mead Data Cent., Inc. v. Dep't of Air Force,*

    566 F.2d 242 (D.C. Cir. 1977) .................................................................... 3, 13

*Media Rsch. Ctr. v. Dep't of Just.,*

    818 F. Supp. 2d 131 (D.D.C. 2011) .............................................................. 2, 3

*Mil. Audit Project v. Casey,*

    656 F.2d 724 (D.C. Cir. 1981) ...................................................................... 3, 4

*Nat'l Treas. Emps. Union v. U.S. Customs Serv.,*

    802 F.2d 525 (D.C. Cir. 1986) ...................................................................... 3, 4

*Pinson v. Dep't of Justice,*

    177 F. Supp. 3d 56 (D.D.C. 2016) .................................................................... 6

*Pub. Citizen Health Rsch. Grp. v. FDA,*

    185 F.3d 898 (D.C. Cir. 1999) .......................................................................... 3

*Roth v. Dep't of Justice,*

    642 F.3d 1161 (D.C. Cir. 2011) ................................................................... 6, 8

*SafeCard Servs., Inc. v. SEC,*

    926 F.2d 1197 (D.C. Cir. 1991) ....................................................................... 3

*Spirko v. U.S. Postal Serv.,*

    147 F.3d 992 (D.C. Cir. 1998) .......................................................................... 4

*Sussman v. U.S. Marshals Serv.,*

    494 F.3d 1106 (D.C. Cir. 2007) ..................................................................... 13

*Vaughn v. Rosen,*

    484 F.2d 820 (D.C. Cir. 1973) ................................................................................................ 3

*Wolf v. CIA,*

    473 F.3d 370 (D.C. Cir. 2007) ................................................................................................ 3

**Statutes**

5 U.S.C. § 552(b) ................................................................................................................. 3, 12

5 U.S.C. § 552(b)(7) ................................................................................................................. 5

5 U.S.C. § 552(b)(7)(D) ........................................................................................................... 4

**Regulations**

28 C.F.R. § 0.85 ....................................................................................................................... 5

# LIST OF EXHIBITS

**Declaration of Rebecca Calcagno**

**Exhibit A**        May 26, 2022 Letter/ FOIA Request from Brad Snyder

**Exhibit C**        May 27, 2022 Letter from NARA acknowledging FOIA request

**Exhibit D**        May 31, 2022 Letter from NARA assigning tracking number RD 67586

**Exhibit E**        November 21, 2022 Letter from NARA re three FBI case files containing
responsive records

**Exhibit F**        February 27, 2023 Letter from Dr. Snyder re expedited processing

**Exhibit G**        March 10, 2023 email from Dr. Snyder amending request for expedited
processing

**Exhibit H**        March 17, 2023 Letter from NARA denying expedited processing

**Exhibit I**        May 10, 2023 Letter appealing NARA's denial of expedited processing

**Exhibit J**        May 31, 2023 Final Response

**Exhibit K**        June 16, 2023 Letter from Dr. Snyder appealing NARA's final response

**Exhibit L**        July 26, 2023 Letter from NARA denying administrative appeal as moot

**Exhibit M**        *Vaughn* Index

This case concerns Plaintiff's request for "any records pertaining to Angelo Herndon, also known as Eugene Braxton or Gene Braxton." Compl. ¶ 7. In response to Plaintiff's request, Defendant located three Federal Bureau of Investigation ("FBI") case files containing responsive records: (1) 100-CG-18143, a domestic security investigation; (2) 61-HQ-7259, a treason investigation; and (3)100-WFO-47734, a domestic security investigation. Calcagno Decl., ¶ 9. Defendant notified Plaintiff that it would release 467 pages in full, 160 pages in part, and withhold one page in full under Exemptions 7(D) and 7(E). *Id.* at ¶ 14. Plaintiff appealed Defendant's response to his FOIA request, arguing that the identities of certain confidential sources are not protected under exemption (7)(D) because the informants are deceased, and challenged 24 redactions of confidential informants' identities, all located within 61-HQ-7259. *Id.* at ¶ 15.[1]

Each of the 24 redactions shields an informant source code used to protect the identity of a confidential informant, and many of the redactions are directly adjacent to the words "Confidential Informant" or the abbreviation "CI." It is well-settled in this jurisdiction that an agency may rely on the presence of alphanumeric source codes and other notations on the face of a document as probative evidence that the source was provided an express promise of confidential treatment, to sustain the agency's summary judgment burden with respect to Exemption 7(D). It is also well-established that the interests protected by Exemption 7(D), which extend well beyond threats of reprisal to an informant, survive the death of a confidential source. Despite these realities, Plaintiff incorrectly argues that Defendant cannot show that the FBI provided promises of

---

[1] The 24 challenged redactions appear on 16 pages within the investigative files requested by Plaintiff. *See Vaughn* Index, Calcagno Decl. Ex. M. Plaintiff erroneously argues that because the *Vaughn* Index omits any reference to NARA's Exemption 7(E) withholdings, Defendant has forfeited those redactions. ECF No. 11, at 6 n. 2. This is not the case. Defendant directed its *Vaughn* and Declaration toward the redactions challenged by Plaintiff, which exclude the 7(E) redactions.

confidential treatment to the informants and that NARA cannot apply Exemption 7(D) to the 24 redactions because they pertain to deceased individuals. Plaintiff's arguments are contrary to the facts and controlling legal precedent in the District of Columbia. Because Defendant clearly satisfied its Exemption 7(D) burden, it is entitled to summary judgment.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

## ARGUMENT

The FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. Fed. Lab. Rels. Auth. ("FLRA")*, 510 U.S. 487, 494 (1994). The FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of FOIA's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions. *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treas. Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986); *see also Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn*

*v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973). The index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treas.*, 802 F.2d at 527 n.9.

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Mil. Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998). Defendant's *Vaughn* Index is attached as Exhibit M to the Calcagno Declaration, and provides further detail on the bases for Defendant's withholdings.

## I.    Defendant is Entitled to Summary Judgment for Each of the 24 Redactions.

Exemption 7(D) protects "records or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source" and "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). To establish that disclosure might identify a confidential source, NARA must demonstrate that the source "provided information under an express assurance of confidentiality or in circumstances that such an assurance can be reasonably inferred." *Landano v. Dep't of Justice*, 508 U.S. 165, 172 (1993).

NARA can readily meet these burdens. As explained in further detail below, the records at issue are law enforcement investigative files, and disclosure could reasonably be expected to

reveal the identities of FBI informants who provided information to the FBI under express assurances of confidentiality.

### A.  The Records At Issue Were Compiled For Law Enforcement Purposes.

Exemption 7 protects six different categories of law enforcement information from disclosure. *See* 5 U.S.C. § 552(b)(7). To qualify under any of the categories, the information at issue must first meet a threshold requirement: that it was "compiled for law enforcement purposes." *Id.* Under 28 U.S.C. §§ 533 and 534, Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and to further the foreign intelligence objectives of the United States.

The responsive records at issue in this case meet the threshold requirement of Exemption 7, in that they were compiled in furtherance of the FBI's criminal law enforcement investigations of Angelo Herndon. Calcagno Decl.  ¶ 24; Ex. M. Therefore, Defendant properly determined that they were compiled for law enforcement purposes.

### B.  The Presence Of Source Codes And Notations On The Face Of The Documents Establish That The FBI Provided Express Assurances Of Confidential Treatment.

NARA redacted informant source codes used by the FBI to refer to confidential informants. *Id.* Under the law of this Circuit, the use of such informant source codes and the presence of other notations in the law enforcement files establish that the FBI gave the sources express assurances of confidential treatment.

To rely on an express promise of confidential treatment, an agency must provide "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998)(citation and internal quotation marks omitted). "Such evidence can take a wide variety of forms, including *notations on the face of a withheld document*, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Id.* (emphasis added). Courts in this jurisdiction have routinely found that the use of FBI source codes to refer to an informant is probative evidence that the source was given an express assurance of confidential treatment. *See, e.g., Roth v. Dep't of Justice*, 642 F.3d 1161, 1185 (D.C. Cir. 2011)(holding that the presence of informant source codes in FBI files established that the FBI gave express informants grants of confidentiality for purposes of Exemption 7(D)); *Mays v. Drug Enforcement Agency*, 234 F.3d 1324, 1328-9 (D.C. Cir. 2000)(holding that the DEA was entitled to summary judgment regarding FOIA Exemption 7(D) where the DEA relied on an informant source code to establish that it had made an express grant of confidentiality); *Callimachi v. Fed. Bureau Investigation*, 583 F. Supp. 3d 70, 88-89 (D.D.C. 2022)(holding that the FBI's reliance on source codes was sufficient to demonstrate that the agency provided express assurances of confidentiality to informants for purposes of Exemption 7(D) and collecting cases in which D.C. Circuit judges "upheld similar explanations by the FBI on source symbol numbers.");Pinson v. Dep't of Justice, 177 F. Supp. 3d 56, 89 (D.D.C. 2016)(entering summary judgment for the FBI on Exemption 7(D) when the agency used "source file numbers" and "source symbol numbers" to refer to informants); *see also, Department of Justice Guide to the Freedom of Information Act Exemption 7(D),* 9-10 n. 45 (posted September 9, 2022) (collecting cases in which courts held that notations on the face of documents, including symbols used to

denote confidential sources, demonstrated that the FBI provided express promises of confidential treatment for purposes of FOIA Exemption 7(D)), *available at* https://www.justice.gov/media/1057196/dl?inline.

Such "notations on the face of a withheld document" that are sufficient to establish express assurances of confidential treatment also include words or abbreviations that law enforcement agencies use to refer to an informant only after they promised confidential treatment. *See, e.g.*, *King v. Dep't of Justice*, 830 F.2d 210, 235 (D.C. Cir. 1987) (holding that express assurances of confidential treatment were given when the "documents [were] marked 'confidential informant' at the time of their compilation"); *Clemente v. Dep't of Justice*, No. 20-1527, 2022 U.S. Dist. LEXIS 210724, *21 (D.D.C. Nov. 21, 2022)(finding that the use of abbreviations "CW" for "cooperating witness" and "CHS" for "confidential human source" is adequate evidence of express assurance of confidentiality); *Kishore v. Dep't of Justice*, 575 F. Supp. 2d 243, 258 (D.D.C. 2008) (holding that the use of the world "PROTECT" next to informant's name on documents indicated express assurance of confidentiality).

A combination of informant source codes and document notations has been found to offer sufficient evidence that the FBI gave express assurances of confidential treatment. In *Callimachi v. FBI*, the United States District Court for the District of Columbia entered summary judgment for the FBI with respect to its Exemption 7(D) redactions, holding that the FBI's use of informant source codes and the presence of notations such as "CW" and "CHS" were "positive indications" that the FBI promised those sources confidential treatment. *Callimachi v. FBI*, 583 F. Supp. 3d. 70, 88-89 (D.D.C. 2022). The Court credited the FBI's assertion that "standard FBI practice requires the agency to promise confidentiality before it can give either designation to a source," and observed that the presence of source codes, which are assigned to unique individuals, is

"evidence that the associated individual was an official source who received an express assurance of confidentiality." *Id.*

This case presents facts highly similar to those of *Callimachi*, as the files contain both informant source codes and document notations. As the *Vaughn* index demonstrates, each of the 24 redactions shields an alphanumeric source code used by the FBI to refer to a confidential informant. Ex. M. Under *Roth, Mays,*, and other D.C. Circuit cases, this information is probative evidence sufficient to establish that the sources were promised confidential treatment. But the documents provide additional reasons to conclude that express assurances of confidential treatment were given. In many instances, the words "Confidential Informant," the letters "C.I.", and the abbreviation "CONF. INFT." appear directly adjacent to the redacted information. Calcagno Decl. ¶ 32; Ex. M. Such source codes and "notations on the face of the [] document," establish that the FBI provided express assurances of confidential treatment.

Plaintiff has presented no reason for this Court to disregard this evidence, or the line of cases finding that such source codes and document notations such as the ones located in Herndon's files offer probative indications that the sources were given express assurances of confidential treatment.

### C. Defendant Has Established Reasonably Foreseeable Harm.

Because Defendant has provided probative evidence of express assurances of confidential treatment, Defendant has also shown that disclosure would harm an interest protected by Exemption 7(D). As the D.C. Circuit Court of Appeals has held, "[i]f the [agency]'s production of criminal investigative records could reasonably be expected to disclose the identity of a confidential source or information furnished by such a source, that ends the matter, and the agency is entitled to withhold the records under Exemption 7(D)." *Roth v. Dep't of Justice*, 642 F.3d at

1184-1185 (cleaned up). This is because the harm arising from the disclosure of a confidential source's identity is "self-evident." *Callimachi*, 583 F. Supp. 3d at 89 (internal quotation marks omitted). An agency may more easily satisfy its burden of showing foreseeable harm where, as here, "the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated." *See Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021) "Unlike Exemptions 6 and 7(C), Exemption 7(D) requires no balancing of public and private interests." *Roth* at 1184.

For these reasons, when an agency establishes there was an express assurance of confidentiality to an informant, courts have found that disclosure of the source's identity would harm the agency's intelligence gathering abilities, because it would discredit the idea that the FBI actually honors its promises to offer confidential treatment. *See, e.g.*, *Clemente v. Fed. Bureau of Investigation*, 2022 U.S. Dist. LEXIS 210724, at *21-22 (finding foreseeable harm where the FBI asserted that "releasing this information would 'display an unwillingness by the FBI to honor its assurance of confidentiality to current and future sources,' causing 'great detriment to the FBI's ability to recruit and maintain reliable confidential sources.'") *Callimachi v. Fed. Bureau of Investigation*, 583 F. Supp. 3d. at 89 (finding that harm from disclosure of identity of confidential sources was "self-evident" and accepting FBI's arguments that breaking its promise to give informants confidential treatment would harm its ability "to credibly promise confidential treatment to future sources.").

Here, because the 24 redactions at issue clearly establish that the FBI promised its informants confidential treatment, the same considerations that led the courts in *Clemente* and *Callimachi* to find foreseeable harm "self-evident" are present. If Defendant were to disclose the confidential source symbol numbers of these informants, their identities could be ascertained by

persons knowledgeable of the FBI's investigations and the events and subjects involved because these singular alphanumeric codes are assigned to specific individuals. Calcagno Decl. ¶ 34. This disclosure "would weaken the FBI's ability to credibly promise confidentiality to future sources." *Callimachi*, 583 F. Supp. 3d. at 89. Disclosure of the confidential source codes would thus harm the FBI's intelligence gathering operations, which depend on sources' willingness to furnish information to the Bureau—a willingness that is contingent upon the credibility of the FBI's promises to afford confidential treatment to people who would face threats of violence and other forms of reprisal if their identities were revealed. Calcagno Decl. ¶¶ 35, 37.

### D. Plaintiff's Arguments Mischaracterize Defendant's Position and the Law.

Plaintiff's arguments, which are factually and legally erroneous, fail to defeat Defendant's entitlement to summary judgment.

First, Plaintiff asserts that NARA's *Vaughn* Index "provides zero evidence that the FBI sources understood that their communications with the FBI would remain confidential." ECF No. 11, at 13. This is incorrect. The law in this jurisdiction is clear that the use of alphanumeric source codes to refer to an informant is probative evidence that the FBI expressly promised the source that its identity would remain confidential, and both the *Vaughn Index* and the Calcagno Declaration establish that each of the challenged redactions refers to an informant source code. *See, e.g., Roth*, 642 F.3d at 1185; *Mays*, 234 F.3d at1328-9; *Callimachi*, 583 F. Supp. 3d at 88-89; *Pinson*, 177 F. Supp. 3d at 89. Defendant has also offered additional evidence of express assurances of confidential treatment through the presence of words such as "confidential informant" and the abbreviations "CI" or "CONF. INFT." in close proximity to the source codes.

Plaintiff further argues incorrectly that the sources must be alive and available to be interviewed to establish that express assurances of confidential treatment were given. ECF No. 11,

at 11. This is refuted by D.C. Circuit jurisprudence. Since source codes and notations on the face of documents are sufficient, and the death of an informant is not even a relevant consideration, sources need not be alive and available to be interviewed for an agency to sustain its summary judgment burden on Exemption 7(D).

Next, Plaintiff mischaracterizes Defendant's foreseeable harm argument as relying exclusively on potential harm to the families of confidential sources. ECF No. 11, at 8. While the possibility of such harm is a relevant consideration, Defendant also cited harm to the FBI's intelligence gathering abilities, which depend on the willing participation of confidential informants. Ex. M; Calcagno Decl. ¶¶ 35, 37. As courts in this District have found, the harm arising from disclosure of confidential informants' identities is "self-evident," and any time its promises of confidential treatment are broken—independent of the source's awareness of such breaches—there is a negative impact on the overall credibility of the FBI's promises to provide confidential treatment to future sources, harming the agency's intelligence gathering abilities. *See, e.g.*, *Callimachi*, 583 F. Supp. 3d at 89.

Finally, Plaintiff argues that the passage of time and death of "[a]ll of the sources involved in the surveillance of Mr. Herndon" makes it impossible for Defendant to establish foreseeable harm. ECF No. 11, at 12. Yet, the foreseeable harm from the disclosure of a source's identity does not end with the death of the informant, as Plaintiff argues. *See* ECF No. 11-1 at 20. Courts in this jurisdiction have rejected this exact argument, and held that the death of an informant is not even a relevant consideration. *See, e.g., Blanton v. Dep't of Justice*, 64 Fed. Appx. 787, 790 (D.C. Cir. 2003)(affirming lower court's rejection of the argument that "the death of a confidential source eliminates the applicability of Exemption 7(D)"); *Campbell*, 164 F.3d at 33 n. 14 (observing that the "[d]eath of a confidential source . . . is not relevant under exemption 7(D)"); *Bullock v. Fed.*

*Bureau Investigation*, 577 F. Supp. 2d 75, 80 (D.D.C. 2008) (holding that "plaintiff's claim that the confidential source is deceased is irrelevant, as Exemption 7(D) continues to apply after the death of a confidential source").

Plaintiff's belief that Exemption 7(D) does not survive the death of an informant apparently arises from his overly narrow view of the interests protected by the exemption. Plaintiff's Motion focuses almost exclusively on harm to the informant, which is a relevant consideration when an agency relies on an implied assurance of confidential treatment, but which is not a required showing where, as here, express assurances of confidential treatment were made. The interests protected by Exemption 7(D) extend beyond the physical safety of an informant and include the credibility of the FBI's promises of confidential treatment and the Bureau's ability to attract and use confidential informants in its intelligence gathering efforts in the future. These are precisely the interests Defendant considered when applying Exemption 7(D) to the 24 redactions at issue. Calcagno Decl. ¶ 40.

Importantly, Plaintiff's Motion contains not a single reference to harm to the FBI's ability to credibly promise confidential treatment and consequent harm to its intelligence gathering operations. It thus follows that Plaintiff failed to provide any basis for the Court to disregard Defendant's evidence and argument concerning harm to the FBI's law enforcement operations. This is a fatal omission and amounts to a concession that Defendant has established foreseeable harm, as parties may not raise new arguments in a reply brief. Because Defendant has established both express assurances of confidential treatment and foreseeable harm to an interest protected by Exemption 7(D) arising from disclosure, Defendant is entitled to summary judgment.

### II. Defendant Released All Reasonably Segregable Information.

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of

records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260. To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, Defendant processed all records responsive to Plaintiff's FOIA request to achieve maximum disclosure, consistent with the access provisions of the FOIA. Calcagno Decl. ¶ 21. Defendant considered the foreseeable harm standard when applying Exemption 7(D), and every effort was made to provide Plaintiff with all reasonably segregable, non-exempt information. *Id.*

## CONCLUSION

Because the information Defendant redacted consists of the identities of confidential informants contained in documents compiled for law enforcement purposes, they were rightfully withheld under Exemption 7(D). The protections of Exemption 7(D) survive even after death. For these reasons and as explained above, Defendant is entitled to summary judgment.

\*      \*      \*

- 13 -

Dated: October 17, 2023
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:       /s/ L'Shauntee J. Robertson
     L'SHAUNTEE J. ROBERTSON
     D.C. Bar  #980248
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     202-252-1729
     Lshauntee.robertson@usdoj.gov


*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRAD SNYDER,

             Plaintiff,

    v.

NATIONAL ARCHIVES AND RECORD
ADMINISTRATION,

             Defendant.

Civil Action No. 23-0731 (CKK)

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(h), Defendant Central Intelligence Agency ("CIA"), by and through undersigned counsel, respectfully submits this Statement of Material Facts as To Which There is No Genuine Dispute in support of its Motion for Summary Judgment.

1.      By letter dated May 11, 2022, Professor Snyder filed a FOIA request with NARA requesting "any records" "pertaining to Angelo Herndon, also known as Eugene Braxton or Gene Braxton." Compl., ECF No. 1, ¶ 7.

2.      By letter dated May 27, 2022, NARA acknowledged Dr. Snyder's FOIA request, and by letter dated May 31, 2022, NARA notified Dr. Snyder that it had assigned his FOIA request tracking number RD 67586. *See* Declaration of Rebecca Calcagno ("Calcagno Decl."), ¶ 8; *see also* **Exhibits C and D.**

3.      On November 21, 2022, NARA notified Dr. Snyder that it located three FBI case files containing responsive records: (1) 100-CG-18143, a domestic security investigation; (2) 61-

HQ-7259, a treason investigation; and (3)100-WFO-47734, a domestic security investigation. Calcagno Decl., ¶ 9; *see also* **Exhibit E.**

4.      By letter dated February 27, 2023, Dr. Snyder requested that NARA process his request on an expedited basis so that he could meet a publishing deadline. In addition, Snyder argued that the records were unlikely to require redactions, considering their age, and asserted that a "delay in processing the records could derail [an] important project." *See id.*  The request was forwarded to Special Access on March 10, 2023. Calcagno Decl., ¶ 10; *see also* **Exhibit F.**

5.      By email dated March 10, 2023, Dr. Snyder amended his request for expedited processing, after NARA informed him that his original request failed to state a basis for expedition under NARA's FOIA regulations. Calcagno Decl., ¶ 11; *see also* **Exhibit G.**

6.      By letter dated March 17, 2023, NARA notified Dr. Snyder that it was denying his request for expedited processing. That same day, Plaintiff filed the instant lawsuit, seeking an order compelling NARA to respond to his FOIA request on an expedited basis.  Calcagno Decl., ¶ 12; *see also* **Exhibit H**.

7.      By letter dated May 10, 2023, Dr. Snyder appealed NARA's denial of his request for expedited processing. Calcagno Decl., ¶ 13; *see also* **Exhibit I**.

8.      NARA sent Plaintiff a final response to his FOIA request and responsive records on May 31, 2023. The final response letter stated that NARA had released 467 pages in full and that it was releasing 160 pages in part and withholding one page in full, under FOIA exemptions (b)(7)(D) and (b)(7)(E). Calcagno Decl., ¶ 14; *see also* **Exhibit J**.

9.      By letter dated June 16, 2023, Dr. Snyder appealed NARA's response to his FOIA request, arguing that the identities of certain confidential sources are not protected under exemption (7)(D) because the informants are deceased. The appeal challenges 24 redactions of

confidential informants' identities, all located within 61-HQ-7259. Calcagno Decl., ¶ 15; *see also*

**Exhibit K** at 3.

10.      By letter dated July 26, 2023, NARA notified Dr. Snyder that it was denying his

administrative appeals as moot, since his request is in litigation. Calcagno Decl., ¶ 16; *see also*

**Exhibit L.**

Dated: October 17, 2023                    Respectfully submitted,
         Washington, DC

                                           MATTHEW M. GRAVES, D.C. Bar #481052
                                           United States Attorney

                                           BRIAN P. HUDAK
                                           Chief, Civil Division


                                           By: */s/ L'Shauntée J. Robertson*
                                               L'SHAUNTEE J. ROBERTSON, D.C. Bar #980248
                                               Assistant United States Attorney
                                               601 D Street, NW
                                               Washington, DC 20530
                                               (202) 252-1729

                                               *Attorneys for the United States of America*

- 3 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRAD SNYDER,

        Plaintiff,

    v.

NATIONAL ARCHIVES AND RECORD
ADMINISTRATION,

        Defendant.

Civil Action No. 23-0731 (CKK)

## [PROPOSED] ORDER

UPON CONSIDERATION of Defendant's Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED; and it is further

ORDERED, that Defendant's motion is GRANTED; and it is further

ORDERED that summary judgment is entered in favor of Defendant.

SO ORDERED:

Dated: _____

`     _____
COLLEEN KOLLAR-KOTELLY
District Judge